IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-HC-2129-FL

| | |
|---|---|
| GARY LAMONT HAYES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ROBERT JONES, ) | |
| ) | |
| Respondent. ) | |

Petitioner petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter came before the court on respondent's motion for summary judgment (DE 10) pursuant to Federal Rule of Civil Procedure 56, to which petitioner responded. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants respondent's motion.

**STATEMENT OF CASE**

On November 18, 2009, petitioner was convicted following a jury trial in the Craven County Superior Court of first-degree murder and sentenced to life imprisonment without parole. See State v. Hayes, No. COA10–656, 2011 WL 1238302, at *1 (N.C. Ct. App., Apr. 5, 2011). On April 5, 2011, the North Carolina Court of Appeals found no error in the conviction. Id. at *5. On August 25, 2011, the North Carolina Supreme Court denied discretionary review. States v. Hayes, 717 S.E.2d 393, 393 (N.C. 2011). On December 13, 2011, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Craven County Superior Court. Pet. Attach. On December 11, 2012, the superior court denied petitioner's MAR. Id. On February 28, 2013, petitioner filed a *pro se* petition for a writ of certiorari in the court of appeals, which was denied on March 18, 2013. Id.

On May 17, 2013, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner alleges the following: (1) he did not have a fair and impartial jury in violation of the Sixth Amendment to the United States Constitution; (2) he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution; and (3) his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution were violated when the prosecution was permitted to present evidence of the victim's violent criminal history. Petitioner also alleges that the trial court prejudiced his right to a fair trial when it failed to instruct the jury on voluntary manslaughter. Respondent subsequently filed a motion for summary judgment, which was fully briefed.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

> The evidence at trial tended to show that Defendant and Odell Foster, Jr. (Mr. Foster) had a history of conflict, including two fistfights at nearby dance clubs in September and November 2007. During the evening of 25 April 2008, Defendant and Mr. Foster had engaged in hostile conversation at one of the dance clubs. Mr. Foster left the dance club and drove to the nearby Bayside Restaurant ("Bayside"). In the early morning hours of 26 April 2008, Defendant followed Mr. Foster to Bayside in a vehicle driven by Moises Rodriguez (Mr. Rodriguez). Defendant and Mr. Rodriguez arrived at Bayside. Mr. Rodriguez stopped the vehicle in the parking lot approximately ten feet from where Mr. Foster was standing by the entrance to Bayside. Defendant testified that, when the vehicle stopped in front of Mr. Foster, he saw Mr. Foster pull up his shirt and reach for a gun in his waistband. Defendant was seated in the front passenger seat of the vehicle. He picked up a shotgun that was leaning against the vehicle console, leaned over Mr. Rodriguez, and fired three shots through Mr. Rodriguez's side window, directly at Mr. Foster. Defendant claimed he had reason to believe his life was in danger, and asserted a claim of self-defense.

2

A grand jury indicted Defendant for first-degree murder on 23 June 2008. Defendant filed written notice on 3 August 2009 of the following potential defenses to first-degree murder: (1) voluntary intoxication with respect to diminished capacity and (2) self-defense. The State filed a motion in limine on 21 August 2009 seeking to prevent Defendant from making references to Mr. Foster's character without a prior ruling from the trial court. In support of his claim of self-defense, Defendant filed a notice of intent to offer evidence of Mr. Foster's prior conviction of voluntary manslaughter on 9 November 2009. The State objected and the trial court held a hearing. The trial court ruled that evidence of Mr. Foster's prior conviction for voluntary manslaughter would be excluded.

The trial court held a jury charge conference to review the proposed jury instructions on 12 November 2009. The proposed instructions permitted the jury to find Defendant: (a) guilty of first-degree murder, (b) guilty of second-degree murder, or (c) not guilty. Defendant requested an additional instruction on voluntary manslaughter, and the trial court heard lengthy arguments by Defendant about the proposed jury instructions and Defendant's request to include voluntary manslaughter. The trial court denied Defendant's motion for an instruction on voluntary manslaughter on 12 November 2009.

The verdict form was submitted to the jury on the afternoon of 12 November 2009. The jury deliberated throughout that afternoon and all of the following day, 13 November 2009. The trial court then recessed to allow one juror to attend an out-of-town funeral. The jury resumed deliberations on 18 November 2009, at which time Defendant renewed his objection to the jury instructions and filed a second motion for additional jury instructions. Defendant requested that the original verdict sheet be withdrawn and that the trial court, after instructing the jury on imperfect self-defense, "submit to [the] jury the issue of voluntary manslaughter[.]" The trial court denied Defendant's motion. The jury found Defendant guilty of first-degree murder on 18 November 2009.

Hayes, 2011 WL 1238302, at *1-2.

## DISCUSSION

A.  Summary Judgment

   1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court

4

decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

   2.   Analysis

      a.   Fair and Impartial Jury

In his first claim, petitioner argues that he did not have a fair and impartial jury in violation of the Sixth Amendment to the United States Constitution. In support of this claim, petitioner argues that only one of the fourteen (14) jurors selected for petitioner's trial was African-American. The MAR court adjudicated this claim and summarily denied it.

In Batson v. Kentucky, 476 U.S. 79 (1986), the United States Supreme Court recognized that the Sixth Amendment guarantees that a jury be selected from a pool of people representing a cross-

5

section of the community, but does not require that the jury "actually chosen . . . mirror the community and reflect the various distinctive groups in the population." Id. at 85 n.6 (quotation omitted). Thus, in Batson, the Supreme Court specifically rejected the proportional-representation argument that petitioner now makes. Id. To pursue a Batson claim, petitioner must show racial discrimination in the selection process. See, Miller-El v. Dretke, 545 U.S. 231, 239 (2005); Batson, 476 U.S. at 94. Petitioner has not met this burden. Rather, he relies upon conclusory allegations, which are insufficient to establish a constitutional violation. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 (1977).

Petitioner additionally argues that the prosecutor prejudiced him when he "told [the] nearly ALL WHITE jury that petitioner used a racial slur against or towards a caucasian service man, yet [it] had nothing to do with petitioner's charges." Pet. ¶ 12(c). The exchange at issue between petitioner and the prosecutor on cross-examination consisted of the following:

> Q. It was an argument of words, is that correct?
> A. Yes.
> Q. In the process of that, and this is some terrible language, "Who the F is that? Is that Pelligrino? That ain't none of your f-ing business, –. Go to your f-ing room." And then saying "F-you, white boy," or words to that effect, and provoking gestures toward a private first class. I mean did you do that, or what happened? Tell the jury what happened.
> A. Man, its hard to explain, but I didn't say none of that. I didn't say nothing they said I said. There was a big group of people out there. It was all–everybody said something towards them. The people that wrote the statements, they pointed me out, you know what I'm saying, and three other people. And there was four of us about to get in trouble and I took the blame for it because I didn't want nobody else to get in trouble. And everybody was gonna get in trouble– all four of us was going

6

> to get NJP [non-judicial punishment] and I didn't want none of that to happen, so I just took the blame for it.
>
> Q. What was the status of two of the other people who were about to get NJPs?
>
> A. One just had a child and one just got some rank; he was a corporal, just got it.
>
> Q. So even though you did not say these things, you took the hit?
>
> A. I took the hit.

Tr. pp. 1106-1107.

Generally, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McQuire, 502 U.S. 62, 67-68 (1991). A state court's determination of an evidentiary question does not give rise to a cognizable claim under § 2254 absent extraordinary circumstances. Fullwood v. Lee, 290 F.3d 663, 692 (4th Cir. 2002) (citing Hutchins v. Garrison, 724 F.2d 1425, 1437 (4th Cir. 1983)). Evidentiary questions are reviewed only when they are "'so extreme as to result in a denial of a constitutionally fair proceeding.'" Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008) (quoting Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000)). "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993) (internal quotations omitted).

In the case at hand, petitioner has not submitted any evidence to establish that the trial was fundamentally unfair or that the prosecutor's questions violated his constitutional rights. Thus, petitioner has not demonstrated that the MAR court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was

7

not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent is entitled to summary judgment on this claim.

b. Ineffective Assistance of Counsel

i. Trial Counsel

In petitioner's second claim, he alleges that he received ineffective assistance of both trial and appellate counsel. Beginning with petitioner's ineffective assistance of trial counsel claim, petitioner contends his trial counsel was rendered ineffective by the trial court's decision not to continue the trial to allow him to call expert witnesses on self defense and voluntary intoxication. Petitioner raised this issue in his MAR, and the superior court summarily denied the claim.

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Petitioner must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and establish "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." Harrington v. Richter, 131 S.Ct. 770, 787 (2011). For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. Even then, however, habeas relief may be granted under

8

Strickland only if the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993); Sexton v. French, 163 F.3d 874, 882 (1998).

Petitioner argues that the adjudication of this claim by the MAR court is an unreasonable application of federal law. Generally, the matter of a continuance is within the discretion of the trial court judge. Ungar v. Sarafite, 376 U.S. 575, 589 (1964); United States v. Matin, 146 F. App'x 599, 600 (4th Cir. 2005). The United States Supreme Court has found that "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris v. Slappy, 461 U.S. 1, 12 (1983) (citing Ungar, 376 U.S. at 589). Additionally, to prove a constitutional violation, a petitioner must show that the denial specifically prejudiced his case. See United States v. Bakker, 925 F.2d 728, 735 (4th Cir. 1991); United States v. Larouche, 896 F.2d 815, 823 (4th Cir. 1990); United States v. Hussein, 151 F. App'x 257, 259 (4th Cir. 2005).

Petitioner argues that the requested continuance was necessary to allow him to call expert witness David Cloutier to testify regarding self-defense and a psychologist to testify regarding petitioner's defense of voluntary intoxication. Petitioner's trial counsel argued these grounds for a continuance during the October 2, 2009, pretrial hearing. Tr. pp. 8-24. The state objected to the continuance. Tr. p. 18. The trial court judge then stated that petitioner's self-defense claim was "sort of iffy" and ruled that petitioner would not suffer 'irreparable prejudice nor [would] his Constitutional rights be infringed," by denial of the motion to continue. Id. p. 24. On appeal, the state court confirmed the trial court's judge's assessment of petitioner's self-defense claim by ruling that the facts in this case did not support petitioner's claim of self defense. See Hayes, 2011 WL 1238302 at *4-5.

Petitioner has not presented any evidence that the outcome of the trial would have been different had petitioner had additional time to procure the testimony of the expert witnesses. Further, the record reflects that petitioner in fact did call expert witness Dr. Moira Artigues to provide testimony in support of his voluntary intoxication defense regarding his diminished capacity. Tr. p. 1252. Based upon the foregoing, petitioner has not demonstrated that the trial court abused its discretion in denying petitioner's motion for a continuance or that the denial prejudiced his case. Nor has petitioner demonstrated that his trial counsel acted unreasonably. Therefore, petitioner has not demonstrated that the MAR court's denial of this claim constituted an unreasonable determination of the facts or a decision contrary to or involving an unreasonable application of Supreme Court precedent. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e)

> ii. Appellate Counsel

Petitioner asserts that his appellate counsel was ineffective for failing to raise petitioner's Sixth Amendment fair and impartial jury claim on direct appeal. As stated, the Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland, 466 U.S. at 686. To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687-88). Appellate counsel is not required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. Reviewing courts must presume that in

10

determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. Pruett v. Thompson, 996 F. 2d 1560, 2568 (4th Cir. 1993).

As set forth above, petitioner has not provided sufficient evidentiary support for his conclusory allegations that he was denied a fair and impartial jury. Nor was appellate counsel required to pursue a meritless claim. Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir 2010) ("Counsel is not required to engage in the filing of futile motions."). Based upon the foregoing, petitioner has not demonstrated that his appellate counsel's representation was objectively unreasonable or that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. Thus, respondent is entitled to summary judgment for this claim.

      c.      Victim's Criminal History

In his third claim, petitioner asserts that his Sixth and Fourteenth Amendment rights were violated when the trial court allowed the prosecution to present evidence of the victim's peacefulness, but denied petitioner's motion to present evidence of the victim's violent criminal history. In particular, petitioner challenges the trial court's denial of his request to present the victim's past indictment for murder and conviction for manslaughter. Petitioner raised this claim in the court of appeals, and the court of appeals denied it on the merits. The court of appeals found as follows:

> Defendant argues that he should have been allowed to introduce evidence that Mr. Foster had been convicted of voluntary manslaughter because that fact was essential to both Defendant's claim of self-defense and his contention that he feared for his life at the hands of Mr. Foster. Our Supreme Court has held that, "when self defense is raised as a defense, the defendant may produce evidence of the victim's character tending to show, '(1) that the victim was the aggressor or (2) that defendant had a reasonable apprehension of death or bodily harm[.]'" State v. Corn, 307 N.C.

11

> 79, 85, 296 S.E.2d 261, 266 (1982) (citation omitted). The Court held that, for the purposes of showing that the victim was the aggressor, the defendant could introduce evidence concerning the violent reputation of the victim. Id. However, the Court also held that the rule did not " 'render admissible evidence of specific acts of violence which have no connection with the homicide.'" Id. (citation omitted).
>
> In State v. Jacobs, 363 N.C. 815, 689 S.E.2d 859 (2010), our Supreme Court recently addressed the issue of admitting certified copies of a victim's prior convictions and found them to be admissible when the defendant offered evidence to show that the defendant knew of these "certain violent acts by the victim [.]" Id. at 822, 689 S.E.2d at 864. The defendant in Jacobs offered testimony of his prior knowledge of the violent acts of the victim, and the Court found that such convictions would be "relevant in that they are consistent with and corroborate to a degree defendant's testimony about the victim's violent past and prison time." Id. at 824, 689 S.E.2d at 865.
>
> No such testimony was offered in the present case. It is undisputed that, at the time of the shooting, Defendant did not know of Mr. Foster's prior conviction for voluntary manslaughter. Standing alone, "conviction records are clearly not evidence of . . . what the defendant actually knew" about the victim. Corn, 307 N.C. at 85, 296 S.E.2d at 266. Without evidence that the defendant was aware of the prior conviction records, they can "be offered neither for the purpose of establishing the victim's reputation for violence nor for the purpose of showing what the defendant knew about the victim's violent behavior." Id. Because Defendant offered no such testimony, Mr. Foster's prior conviction does not serve the "separate purpose of corroborating [Defendant's] testimony" as required by Jacobs. Jacobs, 363 N.C. at 824, 689 S.E.2d at 865. Without the requisite testimony by Defendant concerning his knowledge of Mr. Foster's prior manslaughter conviction, we hold that Mr. Foster's prior conviction record was inadmissible. Id. Accordingly, the trial court did not err in excluding Mr. Foster's prior convictions.

Hayes, 2011 WL 1238302 at *2.

The trial court and court of appeals both ruled the evidence was not admissible on state law grounds. Claims based on state court rulings regarding the exclusion of evidence cannot serve as

12

a basis of federal habeas relief unless they violate specific constitutional provisions or render the trial fundamentally unfair. Estelle, 502 U.S. at 67–68. A petitioner is entitled to relief pursuant to a § 2254 petition if evidence is improperly excluded only if its exclusion had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

In North Carolina, the question of admissibility of evidence pertaining to the character of the victim is governed by North Carolina Rules of Evidence 404 and 405. Rule 404 governs the relevance and admissibility of character evidence and Rule 405 governs the methods of proving character. Specifically, Rule 404(b) provides that other crimes are not admissible to prove the character of a person in order to show that he acted in conformity therewith. N.C. R. Evid. 404(b). Such evidence, however, may be admitted for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." Id. Rule 405 further provides that "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct." N.C. R. Evid. 405.

When a defendant pleads self-defense, the defendant's state of mind is an essential element of the defense, within the meaning of Rule 405(b). See N.C. R. Evid. 405(b); Corn, 307 N.C. at 85. However, the record in this case reflects that petitioner was not aware of the victim's prior criminal history at the time he shot the victim. Accordingly, the victim's prior criminal indictment and conviction were not relevant to petitioner's state of mind on the night he shot the victim. Thus, as found by the North Carolina court of appeals, the victim's prior criminal indictment and conviction

13

were not admissible pursuant to Rule 405(b) to support petitioner's theory of self-defense. Petitioner has not presented any evidence to the contrary.

Even if petitioner could show that the evidence at issue was improperly excluded, he failed to show that its exclusion had a substantial or injurious effect at trial. Brecht, 507 U.S. at 637. Based upon the foregoing, the court finds that the court of appeals' ruling as to this issue reached a result contrary to, or involved an unreasonable application of, clearly established federal law. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e).

          d.        Jury Instruction on Lesser Included Offense

In his fourth claim, petitioner asserts that the trial court's failure to instruct the jury on voluntary manslaughter was prejudicial and violated his right to a fair trial. Petitioner raised this claim on direct appeal, and the court of appeals denied it as meritless.

Generally, a defendant is entitled to a lesser-included offense instruction as a matter of due process for capital cases. Beck v. Alabama, 447 U.S. 625, 638 (1980). However, the United States Supreme Court has never held that such an instruction is required in non-capital state trials. Id. at 638 n. 14 (expressly reserving this issue). Moreover, it is unclear what the current state of the law is on this issue in the Fourth Circuit. See Robinson v. North Carolina Att'y Gen., No. 00-7061, 2000 WL 1868102, at *1 (4th Cir. Dec. 21, 2000) (finding that a decision in the petitioner's favor on lesser-included offense instruction in non-capital case would require enunciation and retroactive application of a new rule); Stewart v. Warden, No. 8:09-842-SB-BHH, 2009 WL 6322405, at *7 (D.S.C. Dec. 10, 2009) ("[I]n the absence of any United States Supreme Court precedent holding that the failure to provide a lesser included offense instruction in non-capital cases implicates a

14

federal right, it cannot be said that the state court violated clearly established federal law as decided by the Supreme Court of the United States.")), appeal dismissed, 412 F. App'x 633 (4th Cir. 2011). Therefore, a decision on petitioner's claim would require the retroactive application of a rule that is not clearly established. The United States Supreme Court's ruling in Teague v. Lane, 489 U.S. 288, 316 (1989), bars the creation of new constitutional rules that must be applied retroactively. Additionally, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67–68.

Even if petitioner's claim was not barred by Teague, he still would not be entitled to relief. Petitioner argued on direct appeal that the trial court erred by denying his request for an additional jury instruction on voluntary manslaughter based on imperfect self-defense. The court of appeals adjudicated this claim and denied it on the merits.

The crime of first-degree murder in North Carolina has the lesser-included offense of voluntary manslaughter. State v. Hampton, 294 N.C. 242, 250 (1978). "Voluntary manslaughter occurs when one kills intentionally, but does so in the heat of passion aroused by adequate provocation or in the exercise of self-defense where excessive force is used or defendant is the aggressor." State v. Lassiter, 160 N.C. App. 443, 454 (2003), rev. denied, 357 N.C. 660 (2003). Accordingly, to be entitled to an instruction on voluntary manslaughter, the "defendant must produce 'heat of passion' or 'provocation' evidence negating the elements of malice, premeditation, or deliberation." State v. Rainey, 154 N.C. App. 282, 290 (2002), rev. denied, 356 N.C. 621 (2002). "An instruction on imperfect self-defense should be given where a defendant 'reasonably believes it necessary to kill the deceased to save himself from death or great bodily harm even if defendant (1) might have brought on the difficulty, provided he did so without murderous intent, and (2) might

15

have used excessive force.'" State v. Cruz, 203 N.C. App. 230, 236, aff'd, 364 N.C. 417 (2010) (quoting State v. Mize, 316 N.C. 48, 52 (1986)).

Here, the court of appeals determined that even the testimony in the case that was most favorable to petitioner did not tend to support petitioner's theory of voluntary manslaughter or imperfect self-defense. Instead, the evidence reflected that when petitioner stopped in front of Bayside restaurant, the victim was standing approximately ten (10) feet from the vehicle. Hayes, 2011 WL 1238302 at *5. The victim did not step toward the vehicle anytime before petitioner shot him. Id. Although, petitioner testified that he saw the victim reach for a weapon in his waistband, there was no evidence that the victim was armed. Id. Accordingly, petitioner's claim that he feared for his life was the only evidence to support his theory of self-defense. Id. As found by the court of appeals, "it was not necessary, nor did it reasonably appear to be necessary, for [petitioner] to kill [the victim] in order to protect himself from great bodily harm." Id. Petitioner has not presented any evidence to the contrary. Thus, petitioner has not demonstrated that the court of appeals court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Based upon the foregoing, respondent's motion for summary judgment is GRANTED as to this claim.

B.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to

16

dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

17

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE 10) is GRANTED. The Certificate of Appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 20th day of March, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge